# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Scott Romeo,<br>    Plaintiff<br><br>v.<br><br>SIMM Associates, Inc.,<br>    Defendant | Docket 3:15-cv-02136-RPC-JFS<br><br>(JUDGE RICHARD P. CONABOY)<br><br>(MAGISTRATE JUDGE JOSEPH F. SAPORITO)<br><br>FILED ELECTRONICALLY |

## BRIEF IN SUPPORT OF PLAINTIFF'S
## PETITION FOR AN AWARD OF ATTORNEY'S FEES
## PURSUANT TO 15 U.S.C. § 1692K

I.   INTRODUCTION AND PROCEDURAL HISTORY

Defendant is a debt collector that mailed a collection letter to Plaintiff. Plaintiff's account number was contained in a barcode that was visible on the outside of the envelope. Judge Nealon has held that this exact conduct violates the Fair Debt Collection Practices Act ("FDCPA" or "the Act"). *Styer v. Prof'l Med. Mgmt., Inc.,* _ F.Supp.3d ---, 2015 WL 4394032 (M.D. Pa. July 15, 2015)(Nealon, J.). He reached his decision based on Third Circuit precedent. *Id.* at *5-9 (citing *Douglass v. Convergent Outsourcing,* 765 F.3d 299 (3d Cir. 2014)).

Plaintiff brought a claim against Defendant in the Luzerne County Court of Common Pleas asserting a violation of the Act. Plaintiff served the complaint

accompanied by a settlement offer. Defendant did not entertain negotiations at this stage of the litigation, and instead removed the matter to this Court.

Defendant served four offers of judgment. Plaintiff accepted the last one. The offer provided that Plaintiff would recover "$1,001.00 plus costs and a reasonable attorney's fee." The parties have been unable to agree upon the amount of the fee, and Plaintiff now seeks a determination from the Court.

## II.   QUESTION PRESENTED

Has Plaintiff fairly assessed the reasonable amount of attorney's fees to be awarded based on his high degree of success?

**Suggested Answer:** Yes.

## III.   ARGUMENT

Pursuant to 15 U.S.C. § 1692k(a)(3), Plaintiff is entitled to a reasonable attorney's fee. "[A]ttorney's fees should not be construed as a special or discretionary remedy; rather, the [FDCPA] mandates an award of attorney's fees as a means of fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Plaintiff's request for fees and costs should be awarded in full.

"Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel." *City of Burlington v. Dague*,

505 U.S. 557, 568 (1992). Fee shifting statutes are designed to combat two issues that would otherwise prevent people from obtaining competent attorneys. "First, many potential plaintiffs lack sufficient resources to hire attorneys." *Id.* Furthermore, "many of the statutes to which Congress attached fee-shifting provisions typically will generate either no damages or only small recoveries; accordingly, plaintiffs bringing cases under these statutes cannot offer attorneys a share of a recovery sufficient to justify a standard contingent-fee arrangement." *Id.* Thus, "[t]he strategy of the fee-shifting provisions is to attract competent counsel to selected federal cases by ensuring that if they prevail, counsel will receive fees commensurable with what they could obtain in other litigation." *Id.* Otherwise, "if federal fee-bearing litigation is less remunerative than private litigation, then the only attorneys who will take such cases will be underemployed lawyers-who likely will be less competent than the successful, busy lawyers who would shun federal fee-bearing litigation-and public interest lawyers . . . ." *Id.* at 568-69.

Additionally, the fee should not be reduced to achieve a result that is proportional to the underlying recovery. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011)(emphasis in original). The *Millea* court explained that this policy is especially important for

claims where a small financial recovery is expected. *Id.*[1] The availability of a lodestar fee, without regard to considerations of proportionality, assures that "claims of modest cash value can attract competent counsel." *Id.*

Courts have adhered to this policy. *See e.g., Evankavitch v. Green Tree Servicing, LLC*, 2014 WL 4437645, at *3 (M.D. Pa. Sept. 9, 2014)(Munley, J.)(awarding $86,351.94 in fees and costs in an FDCPA case where $1,000.00 in statutory damages was awarded after a jury trial); *Gryzbowski v. I.C. Systems, Inc.*, 3:08-cv-01884-TIV Doc. 38 (M.D. Pa. Jun. 5, 2010)(Vanaskie, J.)(adopted a report and recommendation that the entire amount of a $23,419.54 fee request be approved in an FDCPA case where $1,000.00 in statutory damages was awarded after summary judgment); *De Amaral v. Goldsmith & Hull*, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014)(Plaintiff prevailed on dispositive motions under the FDCPA and California's Rosenthal Fair Debt Collection Practices Act, and was awarded statutory damages of $1,000.00 and a fee of $118,978.30); and *Gradisher v. Check Enforcement Unit,* 2003 WL 187416 (W.D. Mich. Jan. 22, 2003)(attorney's fees award of $69,872.00 where plaintiff recovered statutory damages of $1,000.00 under the FDCPA).

---

[1] Here, this is such a claim. As Plaintiff did not seek actual damages, the maximum amount that he could recover at trial was $1,000.00 of statutory damages.

In determining a fee application, the Court must calculate the lodestar, which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate. *See, Interfaith Community Organization v. Honeywell*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983).

   A. *The Reasonableness of the Hours Spent*

The time spent on this matter was reasonable and was necessitated by the Defendant's refusal to settle despite very strong evidence of liability.[2] Plaintiff offered to settle at the very outset. When he served the summons and complaint, he also tendered a settlement offer. He included copies of the Third Circuit's decision in *Douglass* and Judge Nealon's decision in *Styer*, and explained that he was almost certain to succeed because of these cases. Thus, he disclosed the strength of

---

[2] Plaintiff's attorneys have filed hundreds of FDCPA cases. The vast majority of these cases settle early in the litigation. Some of these settlements were reached by acceptance of an offer of judgment that left the amount of attorney's fees to be determined. However, Plaintiff's attorneys believe that this is the first case in their firm's history where a fee application was filed after an offer of judgment had been accepted. In every other such case, Plaintiff's attorneys believes their firm was able to resolve the amount of attorney's fees without having to file a fee application. Plaintiff's attorneys do everything possible to reasonably resolve fee disputes, and are almost always able to do so without involving the Court.

his case upfront to encourage settlement. He also explained that attorney's fees would continue to accrue if the case did not settle. However, Defendant did not accept this offer, nor did it counter. A copy of Plaintiff's letter to Defendant, without enclosures, is attached to the underlying motion as Exhibit A.

Instead, Defendant made a federal case out of it—Defendant removed the case and served an offer of judgment for partial relief.[3] Thus, Plaintiff did not accept the offer. Nonetheless, Defendant thereafter filed a motion to dismiss for lack of jurisdiction in which it argued that its offer of judgment mooted Plaintiff's claim.

The parties were eventually able to negotiate the language of an offer that would be acceptable to Plaintiff. However, by this time Plaintiff had significantly more attorney's fees. These fees were incurred, *inter alia*, beginning a brief

---

[3] Specifically, the offer would have resolved the amount to be paid to Plaintiff for the underlying violation of the statute. However, though the offer agreed to pay a reasonable attorney's fee, it did not set forth a specific amount, and instead left the amount to be determined by the parties or the Court. Although offers such as these are normally acceptable, here Defendant insisted that Plaintiff's attorney's fee recovery would not include compensation for any time spent determining the fee. **In other words, if a fee petition was required, Plaintiff's attorneys would do it for free.** When Defendant tendered the offer, through counsel, it knew that, because of this limitation, the offer did not afford complete relief. Defendant's counsel had previously tendered such an offer, and was on the losing end of this argument in *Andrews v. Prof'l Bureau of Collections of Maryland, Inc.*, 270 F.R.D. 205, 206 (M.D. Pa. 2010)(Nealon, J.). To the extent that Defendant now takes the position that it believed its offer was one for complete relief, its argument is disingenuous.

opposing Defendant's motion to dismiss, drafting a joint case management plan,[4] preparing for the case management conference, and determining what language would be appropriate for an offer of judgment.[5] All of this time might have been avoided if Defendant had simply responded to Plaintiff's efforts to settle the case on a global basis, or if its first offer of judgment did not include improper limitations. As a result, the additional time spent was directly a result of Defendant's desire to litigate.

However, "[w]hile [defendant] is entitled to contest vigorously [plaintiff's] claim, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.*, 770 F. 2d 1566, 1575 (11th Cir. 1985). A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera,* 477 U.S. 561 at n.11 (U.S. 1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)).

---

[4] Defendant refused to participate in drafting the joint case management plan based on its belief that the unaccepted offer of judgment ended the case.

[5] Of course, since the offer of judgment was accepted, Plaintiff has incurred additional fees for the time spent unsuccessfully negotiating a settlement on the amount of attorney's fees and preparing this fee petition.

Thus, the hours Plaintiff incurred in this matter were reasonable.[6]

### B. *The Reasonableness of the Hourly Rates*

The second step in the lodestar inquiry is to determine if the hourly rates requested are reasonable. The reasonable rate is determined by reference "to the prevailing market rates in the relevant community." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Here, the following hourly rates are appropriate:

| | |
|---|---|
| Attorney Carlo Sabatini | $375.00 |
| Attorney Kristin Sabatini | $325.00 |
| Attorney Brett Freeman | $275.00 |
| Paralegals Shannon Dodge and Kathleen Siemion | $125.00 |

---

[6] Here, Plaintiff has done everything possible to avoid the need for the Court to decide this fee petition. He initially made a global settlement offer that included the amount of attorney's fees. After accepting the offer of judgment he attempted to negotiate the amount of attorney's fees. He provided opposing counsel with an itemized statement of fees, and invited commentary. Defendant objected to over 1/3 of the entries contained on the bill, and demanded a discount of over 1/2 off the amount of the bill. Plaintiff conceded that *some* of the objections may have merit, and offered to negotiate a compromise position. However, Defendant refused to compromise on any of its objections, and instead insisted that its offer was to "take it or leave it." (Ex. C. to the underlying motion.)

Plaintiff next proposed that the parties participate in *binding* mediation where they would agree to be bound by whatever Magistrate Judge Saporito felt was fair. This proposal would have avoided the entire fee application process and the possibility of any appeal. Defendant refused, though it did agree to attend a non-binding settlement conference, which proved unsuccessful. An email from counsel regarding Plaintiff's proposal is attached to the underlying motion as Exhibit B.

These rates are reasonable, and are consistent with the prevailing market rates in the relevant community for consumer rights litigation work of similar skill level and experience. Attached to the motion are several affidavits in support of the requested rates. Attached as Exhibit D is an affidavit of Plaintiff's counsel, Carlo Sabatini, describing these rates and attesting to his experience and the experience of the other attorneys in the firm. Attached as Exhibits E-J are affidavits from several attorneys in this district who are familiar with the work of Plaintiff's counsel, or with the prevailing rates in the community for similarly experienced attorneys. (*See* Exhibit E- William Schwab, Exhibit F- Jason Rapa, Exhibit G- Jonathan Comitz, Exhibit H- Matthew Slocum, Exhibit I- Joseph Sucec, and Exhibit J- Joseph Comerota.) Additionally, Plaintiff has attached, as Exhibit K, an affidavit from one of his attorneys' clients attesting that he has incurred fees at the requested rates.

Judges in this district have held that the "relevant community" includes the entire Middle and Eastern Districts of Pennsylvania. In *Valenti v. Allstate Ins. Co.*, 243 F.Supp.2d 200, 207 (M.D. Pa 2003), Magistrate Judge Mannion held "that the 'relevant community' for the purpose of determining billing rates in [a] bad faith claim includes not only Northeastern Pennsylvania, but at least, the entire Middle District and Eastern District of Pennsylvania." In reaching this holding, the court mentioned its "experience in often seeing counsel from the Eastern District of

Pennsylvania practicing in both federal and local courts within the Middle District of Pennsylvania." *Id.*

This policy should be applied with even greater force with respect to FDCPA cases. This is so because of the dearth of local attorneys that practice this type of law. Plaintiff's attorneys are some of the only attorneys in the Middle District of Pennsylvania who litigate FDCPA cases.[7] Furthermore, many of the cases brought in this district are brought by attorneys from the Eastern District of Pennsylvania. And, in the vast majority of FDCPA cases, defendants are represented by firms located in Philadelphia.[8] None of this is surprising, as the

---

[7] A Westlaw search of decisions from courts in this district containing the word FDCPA issued since January 1, 2014 returns 31 decisions. Ten of those decisions have involved Plaintiff's counsel's firm. Six of those decisions involved pro-se plaintiffs. Nine of the decisions involved various plaintiff firms from the Philadelphia area. Two of the decisions involved a plaintiff firm from the Pittsburgh area. One of the decisions involved a plaintiff firm from New York State. The last three decisions involved attorneys located in the Middle District of Pennsylvania. However, of those three decisions, *none* involved claims brought under the FDCPA. Rather, two of those cases were brought under the Fair Credit Reporting Act and the third under the Fair Labor Standards Act. In all three of those opinions the FDCPA was mentioned only briefly. Thus, no other law firm located in the Middle District of Pennsylvania has obtained even a single FDCPA decision from this court within the past two years.

[8] Of the 31 decisions referenced in the previous footnote, only three local attorneys appeared on behalf of a defendant. Of those three, one was involved in the case solely to move to admit a Philadelphia lawyer *pro hac vice*, the second was representing the defendant in the Fair Labor Standards Act case mentioned above, and the third was involved in a case which did not allege a violation of the FDCPA, but only referenced the FDCPA briefly. Conversely, in over 2/3 of these cases, the defendants were represented by Philadelphia firms. Thus, it appears clear

10

Supreme Court has described the FDCPA as a "comprehensive and complex federal statute . . . ." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010). Thus, as the litigation in this district is often conducted by Philadelphia counsel, it is certainly proper to include Philadelphia as part of the relevant community.

One gauge that is often used to evaluate the rates of attorneys in the Philadelphia area is the schedule of attorney's fees published by Community Legal Services of Philadelphia. The Third Circuit has approved the use of this schedule for rates in Philadelphia. *See Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001).[9] And, the CLS Fee Schedule has been used by multiple judges in this district.[10]

---

that it is extremely common for FDCPA cases in this district to be defended by attorneys from Philadelphia.

[9] The rates listed in the fee schedule have been updated a number of times since the *Maldonado* decision.

[10] *See e.g.*, *Brown v. TrueBlue, Inc.*, 2013 WL 5947499, at *3 (M.D. Pa. Nov. 5, 2013)(Kane, J. setting hourly rates after reference to the Community Legal Services Fee Schedule); *Stockport Mountain Corp., LLC v. Norcross Wildlife Found., Inc.*, 2014 WL 131604, at *4 (M.D. Pa. Jan. 13, 2014)(Munley, J., same); *Benjamin v. Dep't of Pub. Welfare of Com. of Pennsylvania*, 2014 WL 4793736, at *8 (M.D. Pa. Sept. 25, 2014)(Jones, J)(approving rates after stating that "[w]hile the hourly rates charged may be somewhat higher than the typical rate here in the Middle District, the rates are in step with those prescribed as reasonable under

The rates requested are generally in conformity with the fee schedule. In fact, the requested rate for Carlo Sabatini is *below* the low end of the appropriate market rate. Attorney Sabatini has been an attorney for over 16 years. The Community Legal Services Fee Schedule indicates that an appropriate rate for attorneys with 16 to 20 years of experience is from $435.00 - $505.00. (See CLS Fee Schedule attached to Sabatini Aff. as Exhibit 1.) Thus, his rate of $375.00 is substantially less than the minimum stated reasonable fee on the fee schedule.

Attorney Kristin Sabatini has been an attorney for over 10 years. Her rate, at $325.00 per hour, is within the schedule's range of $265.00-$335.00 for attorneys with six to ten years of experience. Lastly, Attorney Brett Freeman has been an attorney for over five years. His rate of $275.00 per hour only slightly exceeds the rate suggested by the fee schedule for attorneys with three to five years of experience. As his experience is at the top end of this bracket, it is not unreasonable for his actual rate to slightly exceed the listed amount. *See, e.g., Brown v. TrueBlue, Inc.*, 2013 WL 5947499, at *2 (M.D. Pa. Nov. 5, 2013)(approving the rates for two attorneys which slightly exceeded the ranges suggested in the CLS fee schedule).

---

the Community Legal Services fee schedule (Doc. 348–8, p. 20, 21), which courts in our District have deemed instructive.").

The rates currently charged by Plaintiff's counsel went into effect at the beginning of 2016, and have not yet been considered by any court. However, his counsel's 2015 rates were approved by every court that considered them. For example, Judge Caputo recently approved the rates of $350.00 per hour for Attorney Sabatini and $250.00 per hour for Attorney Brett Freeman. *See Richards v. Client Servs., Inc.*, 2015 WL 5836274, at *3 (M.D. Pa. Oct. 5, 2015). The 2015 rates were also approved by both local bankruptcy judges. *See generally Reed et al., v. Heller's Gas, Inc.*, 5:13-ap-00207-JJT, Doc. 73 (Thomas, J.); *In re Richmond*, 5:14-bk-02225-RNO, Doc. 52 and 55 (Opel, J.). Although the rates were not contested before these bankruptcy courts, a bankruptcy court's approval of an hourly rate is especially relevant, given that court's responsibility to independently review fee requests, even in the absence of any objection. *See, In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3d Cir. 1994).

Thus, because the hourly rates being sought are consistent with the relevant market rates, they are reasonable and should be approved.

## CONCLUSION

It is unfortunate that this fee issue requires Court involvement. Plaintiff did everything in his power to obtain a mutually agreeable resolution. However, Defendant was not interested in negotiating in good-faith. Rather than respond to Plaintiff's early settlement offer, Defendant removed the case and served an offer

of judgment. And, after Plaintiff rejected the offer due to obvious defects that were known to Defendant, Defendant nevertheless filed a motion to dismiss the case for lack of jurisdiction.

Then, after the parties were eventually able to negotiate the language of an acceptable offer of judgment, Defendant did not reasonably negotiate the amount of attorney's fees. Instead, it provided Plaintiff with a take-it-or-leave-it offer.[11] And, Defendant was unwilling to agree to binding mediation, which would have efficiently resolved the issue. Defendant has litigated this case tenaciously, and it cannot now come in and complain about the amount of time that it forced Plaintiff to spend. And, as discussed above, all of the requested time was reasonably incurred.

Furthermore, the hourly rates requested are reasonable. There is a notable absence of local attorneys representing plaintiffs or defendants in FDCPA cases in this district. As many courts in this district have already done, it is proper to define the relevant market to include the entire Middle District and Eastern District of Pennsylvania. It is also appropriate to refer to the CLS fee schedule, which has been approved by the Third Circuit, when evaluating hourly rates. And, Plaintiff

---

[11] An email from Defendant's counsel to Plaintiff's counsel indicating that its offer was a take-it-or-leave-it offer is attached to the underlying motion as Exhibit C.

has provided multiple affidavits from local attorneys attesting to the appropriateness of the rates requested. Thus, the rates are reasonable.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the full amount requested in his fee petition.

s/ Brett Freeman
Brett Freeman
Bar Number PA 308834
Attorney for Plaintiff
SABATINI LAW FIRM, LLC
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email bfecf@bankruptcypa.com

## **CERTIFICATE OF SERVICE**

Service is being effectuated via the CM/ECF system.

s/ Brett Freeman
Brett Freeman

15